UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARQUS A. LAWTON,

    Plaintiff,

v.                                Case No. 8:24-cv-00194-AEP

LELAND DUDEK,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.   Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 10). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 10). Plaintiff then requested an administrative hearing (Tr. 10). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Leland Dudek should be substituted as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

appeared and testified (Tr. 10). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 24). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.  Factual Background and the ALJ's Decision

Plaintiff, who was born in 1985, claimed disability beginning January 10, 2021, but later amended the alleged onset date to August 9, 2020 (Tr. 10, 52). Plaintiff obtained a twelfth-grade education (Tr. 203). Plaintiff's past relevant work experience included work as a fast-food worker, cafeteria attendant, and infantry weapons crew member (Tr. 21, 44). Plaintiff alleged disability due to Post-Traumatic Stress Disorder, migraine headaches, intervertebral disc syndrome, paralysis of the sciatic nerve, lumbosacral strain, limited motion of the left and right arm, stage 1 colon cancer polyp, limited flexion of the left and right knee, tinnitus, and cervical strain (Tr. 202).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2025, and had not engaged in substantial gainful activity since August 9, 2020, the amended alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, lumbar spine; status post-resection of non-malignant rectal tumor;

headache disorder; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder ("PTSD") (Tr. 13). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except the claimant should never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; must avoid concentrated exposure to excessive noise and avoid even moderate exposure to use of dangerous, moving machinery and exposure to unprotected heights; requires a cane to ambulate; and can perform only simple tasks. (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 21). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a final assembler, fruit or nut sorter, or table worker (Tr. 23).

3

Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

## II.

To be entitled to benefits, a claimant must be disabled, meaning they must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant

cannot perform the tasks required of their prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy, given their age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable

legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law or to give the reviewing court sufficient reasoning for determining that they have conducted the proper legal analysis mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by (1) incorrectly evaluating the prior administrative medical findings of the state agency medical consultants and (2) failing to account for all of Plaintiff's limitations in the RFC. For the following

reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.     The ALJ's Evaluation of Prior Administrative Medical Findings

Plaintiff first argues that the ALJ incorrectly evaluated the persuasiveness of prior administrative medical findings of the state agency medical consultants. Specifically, Plaintiff asserts two errors by the ALJ: (i) Plaintiff disagrees with the ALJ's explanation regarding the consistency of the state agency medical consultants' findings with other record evidence, and (ii) Plaintiff asserts that the ALJ did not address the supportability of the administrative medical findings as required by the applicable regulations (Doc. 11, at 4–9).

For claims filed on or after March 27, 2017, ALJs evaluate the persuasiveness of prior administrative medical findings using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. *Id.* §§ 404.1520c(c)(1)–(5). Supportability and consistency are the most important factors, and the ALJ must explain how they considered these factors in the determination or decision. *Id.* § 404.1520c(b)(2). "Supportability" refers to the relevance of the objective medical evidence and supporting explanations offered by a medical source to support their opinions. *Id.* § 404.1520c(c)(1). "Consistency" refers to how consistent the statement is with the evidence from other medical and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

### *i. Consistency*

Plaintiff first concedes that the ALJ did address the consistency factor as required but argues that "there are problems with the ALJ's assertion of consistency" (Doc. 11, at 5). Specifically, Plaintiff argues that the state agency medical consultants made a statement on an issue reserved to the Commissioner that the ALJ should not have analyzed and that the findings were inconsistent with the statements of Dr. Perez, Plaintiff's treating provider at the VA. Each issue will be addressed in turn.

First, Plaintiff argues that the ALJ's reference to the state agency medical consultants' finding that Plaintiff was limited to sedentary work was inappropriate (Doc. 11, at 5). Statements on issues reserved to the Commissioner are inherently neither valuable nor persuasive, and an ALJ "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c). Among the issues reserved to the Commissioner are statements about a claimant's residual functional capacity using programmatic terms about the functional exertional levels (*i.e.*, sedentary, light, medium, heavy, etc.). *See id.*; 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.000. Instead of considering programmatic terms such as "sedentary" or "light" work, ALJs should only focus on descriptions of a claimant's functional abilities and limitations. *See* 20 C.F.R. § 404.1520b(c)(3)(v).

Here, the ALJ's consistency analysis does not violate 20 C.F.R. § 404.1520b(c). The ALJ compared the state agency finding "that the claimant is

8

limited to a reduced range of light exertion, with additional standing and walking limitations closer to the sedentary level" to a consultative evaluator's examination "that showed some range of motion deficits in the shoulders in addition to greater range of motion deficits in the lumbar spine and knees, and with the imaging showing degenerative disc disease in the lumbar spine" (Tr. 20). Although the ALJ used the word "sedentary" in the analysis, the word is only used to describe the "reduced range of light exertion" and "additional standing and walking limitations" in the state agency findings. Indeed, the rest of the analysis appropriately focused on "descriptions about a claimant's functional abilities and limitations" and is not a statement on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(v). For example, the ALJ compared the state agency medical consultants' finding that Plaintiff requires a cane with the consultative evaluator's findings and recent notations in the treatment notes of the claimant's treating provider at the VA (Tr. 20).

Second, Plaintiff argues that the state agency medical consultants' statements are not consistent with the statements of Dr. Perez (Doc. 11, at 6). Plaintiff highlights differences between the state agency medical consultants' findings and Dr. Perez's findings, including differences in the amount Plaintiff could lift and carry, the amount of time Plaintiff could stand, sit, and walk, Plaintiff's ability to balance, Plaintiff's ability to crouch and stoop, and Plaintiff's need for unscheduled breaks (Doc. 11, at 6–7). In comparing the findings for consistency, the ALJ merely asserted that the medical consultants "ultimately applied the Medical-Vocational

9

Rule applicable to a sedentary level of exertion, which is supported by Dr. Perez's opinions" (Tr. 20). The ALJ did not attempt to compare every aspect of Dr. Perez's opinion to the state agency medical consultants' opinions. Further, in finding the state agency medical consultants' opinions only partially persuasive, the ALJ stated that "neither medical consultant had the benefit of reviewing the treating source statement later submitted by the claimant's treating provider at the VA, Enos Perez, M.D., which further limited the claimant" (Tr. 20). Far from asserting that the opinions are entirely consistent, the ALJ fairly compared each set of opinions and stated that they both support a sedentary level of exertion (Tr. 20). Although Plaintiff may disagree with the ALJ's consistency analysis, the ALJ properly addressed the consistency factor by comparing the prior administrative findings of the state agency medical consultants to the other evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2).

> ii. *Supportability*

Plaintiff argues that the ALJ failed to address the supportability factor as required by 20 C.F.R. § 404.1520c(b)(2). Defendant contends that the ALJ adequately considered the supportability factor despite not using the "magic words" to indicate supportability. *See Nixon v. Kijakazi*, No. 6:20-cv-957-JRK, 2021 WL 4146295, at *5 (M.D. Fla. Sept. 13, 2021) ("Although the ALJ did not explicitly discuss the particular opinion's supportability and consistency as required by the Regulations, when read in context, it becomes evident the ALJ did not find the opinion supported by or consistent with the balance of the evidence."); *Frye v.*

10

*Comm'r of Soc. Sec.*, No: 6:21-cv-741-DCI, 2022 WL 1045719, at *5 (M.D. Fla. Apr. 7, 2022) ("The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physician's own records, and the Court finds that to be adequate.") (citation omitted).

The ALJ found the prior administrative findings of the state agency medical consultants "partially persuasive" (Tr. 20). In the findings, the state agency medical consultants prescribed an RFC for the claimant followed by a section entitled "RFC Additional Explanation" (Tr. 58–59, 70–71). In this explanation section, the consultants provided the evidence relied upon to support their RFC findings, including notes from the examination performed by Dr. Puchir, imaging showing degenerative disc disease in the lumbar spine, and Plaintiff's use of a cane, among others (Tr. 58–59, 70–71). The ALJ explained that the state agency medical consultant's finding "is consistent with" the objective examination findings of Dr. Puchir, imaging showing degenerative disc disease in the lumbar spine, and the requirement of a cane (Tr. 20). While at first blush this analysis seems to apply more to the consistency factor, the ALJ actually explained the "relevance of the objective medical evidence and supporting explanations offered by a medical source in support of their opinions." 20 C.F.R. § 404.1520c(c)(1). Although the ALJ used the phrase "consistent with," the evidence presented is better understood as a supporting explanation offered by the consultants for their opinions. Thus, the ALJ properly considered the supportability factor.

### B.     The ALJ's RFC Assessment

Plaintiff next argues that the ALJ failed to account for Plaintiff's limitations in adapting and managing oneself, interacting with others, and understanding, remembering, and applying information in combination with his other impairments in the RFC assessment. For the reasons set forth below, Plaintiff's argument is without merit.

Agency regulations require a "special technique" to be used by the ALJ when evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a. Essentially, this technique requires an assessment regarding how the claimant's mental impairments impact four broad functional areas, also referred to as "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in evaluating Plaintiff's limitations in each of the paragraph B criteria: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). When considering a claimant's mental impairments, the ALJ must incorporate the pertinent findings and conclusions based on the technique into the written decision and make a specific finding regarding the degree of limitation for each paragraph B criteria. *Moore*, 405 F.3d at 1213–14; 20 C.F.R. § 404.1520a(e)(4).

The paragraph B findings are not an RFC assessment; rather, the RFC formation requires a more detailed assessment. *Schink v. Comm'r of Soc. Sec.*, 935

F.3d 1245, 1269 (11th Cir. 2019). To determine a claimant's RFC, an ALJ assesses, based on all the relevant evidence of record, what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink*, 935 F.3d at 1268 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3); Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

Additionally, the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find "mild" limitations in the paragraph B criteria. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179 (M.D. Fla. Mar. 25, 2021); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas[, but] did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the

14

paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022); *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) ("ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations.").

Here, at step two of the sequential evaluation process, the ALJ considered Plaintiff's severe mental impairments of anxiety, depression, and PTSD (Tr. 13). The ALJ determined, however, that "the severity of claimant's mental impairments, considered singly and in combination, do not meet medically equal the criteria of listings 12.04, 12.06, and 12.15" (Tr. 13). The ALJ found the "paragraph B" criteria were not satisfied because the impairments did not result in at least one extreme limitation or two marked limitations (Tr. 14). Specifically, the ALJ found mild limitations in understanding, remembering or applying information; interacting with others; and adapting or managing oneself and a moderate limitation regarding concentrating, persisting, or maintaining pace (Tr. 13–14).

In the subsequent RFC assessment, the ALJ properly provided a detailed summary of the objective medical evidence and Plaintiff's subjective statements related to his mental functioning. The ALJ noted Plaintiff's statements that he can complete his own grooming and takes care of his children and pets despite needing help with most of the household chores (Tr. 16). Further, the ALJ considered Plaintiff's hearing testimony regarding seeing a counselor every 6 months for his PTSD (Tr. 16). The ALJ noted that medical records from the VA showed Plaintiff was positive for PTSD, depression, and anxiety, causing him to be referred to

mental health treatment (Tr. 16). The ALJ considered a cognitive evaluation "did not reveal any abnormalities, and the claimant was described as oriented to person, place, time, and situation with a good attention" (Tr. 16). At that same evaluation, Plaintiff reported independence in grooming, bathing, cooking on the grill, driving, shopping, and money management, but indicated that he was a bit disorganized with his medication and needed reminders on his phone (Tr. 16). Based on this evaluation, occupational therapy services were considered unnecessary, and Plaintiff was discharged with no referral for further services (Tr. 16). At a psychiatry evaluation at the VA, Plaintiff reported low-grade depression and exacerbation of PTSD symptoms, but examination findings showed he was "pleasant and cooperative, with good eye contact, an organized and goal directed thought process, no evidence of delusions or hallucinations, intact attention, concrete reasoning, intact immediate, delayed, and long-term memory, and grossly intact concentration span, and he was able to follow 3-step instructions." (Tr. 17). Later examinations showed improved mood, nightmares and trouble sleeping, and "occasional" panic attacks, with the ALJ highlighting that the examination findings "were grossly normal in terms of cognitive and executive functioning with only an anxious mood reported" (Tr. 17). Later mental status examination findings showed Plaintiff was "alert and fully oriented, calm cooperative, and pleasant" as well as "articulate, with a linear, coherent, and goal-oriented thought process, and cognition was intact with fair insight and judgment" (Tr. 18). The ALJ found Plaintiff "has mental and physical impairments that would reasonably limit his ability to perform specific

functions in the workplace" (Tr. 19). The ALJ noted that "he has not had any psychiatric hospitalizations, and has reported his mental health medications help" (Tr. 19). After considering the entire record and Plaintiff's mental impairments, the ALJ found Plaintiff had the RFC to perform sedentary work with several additional physical limitations and the mental limitation that he "can perform only simple tasks" (Tr. 15).

In sum, the ALJ conducted a detailed assessment and properly considered Plaintiff's overall condition in electing not to include further mental limitations in the RFC. *See Schink*, 935 F.3d at 1268–69. Accordingly, the ALJ properly evaluated the severity of Plaintiff's mental impairments, and his decision that Plaintiff's mental conditions do not limit his ability to perform work-related activities is supported by substantial evidence.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

DONE AND ORDERED in Tampa, Florida, on this 12th day of March 2025.

                                                  ANTHONY E. PORCELLI
                                                  United States Magistrate Judge

cc: Counsel of Record